UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

MICHAEL PERRY                                                                    PLAINTIFF
MUHOMMAD

v.                                        Civil No. 4:14-CV-04032

HEMPSTEAD COUNTY ,                                                              DEFENDANTS
ARKANSAS; SHERIFF JAMES
SINGLETON; JOHNNY
GODBOLT; NURSE LORI
ROOK; JAILER B. WALKER;
JAILER P. SUMMERVILLE;
and SERGEANT V. MOULDON

## REPORT AND RECOMMENDATION

This is a civil rights action filed by Plaintiff, Michael Perry Muhommad, pursuant to the

provisions of 42 U.S.C. § 1983.  Plaintiff proceeds *pro se* and *in forma pauperis*.  Pursuant to the

provisions of 28 U.S. C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States

District Judge, referred this case to the undersigned for the purpose of making a report and

recommendation.

Currently before the Court is a summary judgment motion by Defendants Godbolt,

Hempstead County, Mouldon, Rook, and Singleton.[1]  ECF No. 42.  After careful consideration of

the briefing, the undersigned makes the following Report and Recommendation.

---

[1] The summons for Defendant Walker was returned unexecuted on June 14, 2014 because
he was no longer employed by the Sheriff's Office.  ECF No. 15.  Service was not later effected
upon this Defendant.  Defendant Summerville was served on August 21, 2014 (ECF No. 19), but
he did not file an Answer.  Defendant Summerville was also no longer employed with the
Sheriff's Office.  However, as discussed later in this report, Plaintiff did not state a cognizable
claim against these parties.

1.    **BACKGROUND**

Plaintiff's alleges denial of medical care for his right leg at the Hempstead County Detention Facility ("HCDC") between January 20, 2011 and July 20, 2011.  He alleges this denial of care resulted in a methicillin-resistant Staphylococcus aureus ("MRSA") infection.  Plaintiff states he broke his leg in a motorcycle accident several months prior to his incarceration.  ECF No. 1, p. 3.  Plaintiff further alleges facts indicating an excessive force claim against Defendants Summerville and Walker.  Plaintiff proceeds against Defendants in both their official and personal capacities.  ECF No. 1, p. 2.  Because the Plaintiff's history concerning his leg is lengthy and encompasses several years, it is presented in a timeline list below.  The timeline was created based on the documents submitted prior to the summary judgment hearing by both Plaintiff and Defendants.  Testimony from the summary judgment hearing on January 7, 2016, will be summarized after the timeline.

   *A.  Timeline*

**8/26/2010**    Accident and surgery on leg.  ECF No. 1, p. 13

**9/17/2010**    Follow-up on surgery.  ECF No. 1, p. 13.

**1/20/2011**    Arrest –"I was booked into the Hempstead County Detention Center, as I was in outpatient treatment for a MotorCycle Accident in which I acquired MRSA in my injured Rt. leg."  ECF No. 1, p. 3.

**1/21/2011**    Jailers took his crutches and could not get medications for him.

**1/22/2011**    Fell several times due to lack of crutches.  "I was sprayed several times by Officer Walker and Officer Summerville when I could not get up at all because I hit the door requesting help." Wound bleeding – taken to ER.  ECF No. 43, p. 2.  Plaintiff refused

2

treatment once he got there because he had previous problems with the doctor on duty in the ER.  ECF No. 43, p. 2; ECF No. 43-1.

**1/28/2011**      River Valley Musculoskeletal Center ("RVMSC") Notes indicate Plaintiff was supposed to come back two weeks after the September 17 visit and "we never saw him back. He now comes in." Notes a superficial wound over shin, no significant drainage, and not a lot of tenderness. Ok to progress to weight-bearing. Put him on antibiotic (Keflex), and told him to clean the wound daily with peroxide and dress with Neosporin.  ECF No. 1, p. 13, 15.  X-ray record notes "excellent healing" of the fracture.  ECF No. 1, p. 14. Return in two weeks.

**1/29/2011**      Fell in shower – taken to ER.  ECF No. 43-2.  Notes leg was cultured January 25 – no growth.  Pt. "needs to see a bone doctor"

**2/1/2011**      Taken to local ER for reports of leg swollen and hurting.  ECF No. 43-3.

**2/3/2011**      Seen by Nurse McClean in HCDC.  ECF No. 43, p. 2-3.

**2/14/2011**      RVMSC – Notes indicate wound continues to be painful and somewhat swollen despite antibiotics.  Doctor is concerned about possible osteomyelitis in the tibia. "He says he is getting clindamycin, he thinks, not Keflex that we gave him. Certainly clindamycin is a good antibiotic, but I do not know why it was changed or who changed it. In any case, I think we need at this point to admit him to the hospital, do an open I&D and get deep cultures of that wound." ECF No. 1, p. 16.  According to Defendants, Plaintiff was released from jail at this point and then re-arrested on March 1, 2011.  ECF No. 43, p. 3.

**3/1/2011**       Arrest and booking

**3/2/2011**        Requested medication for leg and mental health consult, then refused to be seen by

the nurse.  ECF No. 43, p. 3 and Ex. G.

**3/13/2011**       Incident report – Plaintiff refusing to change bandages on his own and would not

let officer do it.  Said only a nurse or shift supervisor could change them. He had been

changing on his own prior to this.  ECF No. 43, p. 4 and Ex. H.

**3/15/2011**       Sparks Regional Medical Center – remove hardware in leg; I&D,[2] and deep culture

samples. ECF No. 1, p. 17.

**3/17/2011**       Sparks – cultures negative, wound clean. "No sign of infection and both Gram stain

and cultures have been negative." ECF No. 1, p. 19.

**3/30/2011**       RVMSC – Dr. Sherrill – surgeon for initial and second surgery. Wound is "quite

clean" with "no evidence of infection."  Notes Plaintiff stating he scratched his leg because

the nurse sprayed something on it and it itched, so his wound broke open.  Some of the

stitches have been removed. Come back in about 10-14 days. ECF No. 1, p. 21.

**4/11/2011**       RVMSC **-** X-ray confirms excellent healing of bone, but he is still having trouble

with wound healing. Complains jail is not doing daily change of dressings.  Dr. put him on

Keflex and tried to call Captain Godbolt.  Come back in about 2 weeks.  ECF No. 1, p. 23.

**4/25/2011**       RVMSC - Patient comes in with a sanitary napkin on his leg and says it has not

been changed in a week. No obvious drainage, no bigger than last visit. Some diffuse

swelling. Doctor would like him to go to physical therapy and get some Jobst compression

stockings. Come back in two weeks.  ECF No. 1, p. 25.

---

[2] Irrigation and debridement.  Debridement is the process of removing dead skin and
tissue. https://www.nlm.nih.gov/medlineplus/ency/patientinstructions/000739.htm.

4

**5/9/2011**      RVMSC – No PT, no Jobst compression.  "He did finally grow something on his cultures from last visit. It was a staph sensitive to almost everything, but he had not responded to cephalosporin. We will change him to clindamycin, which show sensitivity and is an inexpensive treatment." Daily dressing and Jobst compression on that leg. Come back in about 3 weeks.  ECF No. 1, p. 26.

**6/1/2011**      RVMSC – Has not gotten any PT or wound care as requested. "I do not think we have any alternative, but to put him in the hospital and repeat an I&D. His cultures were negative, but obviously the wound has changed quite a bit since that time."

**6/2/2011**      Incident Report – Plaintiff refused to take his medication and then cut his wrist with glass in his cell.  ECF No. 43, p. 5 and Ex. N.

**6/7/2011**      Sparks – surgery. I&D, multiple cultures taken.  Started on IV Ancef and consultation with infectious disease specialist, and MRI.  ECF No. 1, p 34.  MRI findings "highly suspicious for osteomyelitis." ECF No. 1, p. 35.  Suggest MRSA screening.  ECF No. 1, p. 43.

**7/5/2011**      Dr. Sherrill Notes - Sparks case management received a call from Judge Wright – patient has a court order to go back to Hope, AR for court issues.  Judge will take responsibility for referring him to appropriate hospital.  Dr. Sherrill recommends he continue as inpatient – not outpatient, includes a number of directions, and signs off on discharge. ECF No. 1, p. 38-39.

**7/7/2011**      Incident report – Plaintiff cut his stomach with a razor blade and initially refused treatment.  Was eventually taken to hospital. ECF No. 43, p. 5 and Ex O.

**7/20/2011**     Transfer to Arkansas Department of Corrections ("ADC").

**Next two years** – Plaintiff continues to have problems with leg while in ADC.  On July 4, 2013,

ADC medical provides notes indicating Plaintiff "does alter the wound and is not always

compliant to the care offered." ECF No. 43,  Ex. P, p. 10.

### B.  Hearing Testimony

The summary judgment hearing was held on January 7, 2016 in Texarkana.  Defendants

and Defendants' counsel waived appearance at the hearing and waived the right to file any written

response to any information presented by Plaintiff at the hearing. ECF No. 50.  As this information

is based on Plaintiff's testimony, the information will be provided without restating the term

"Plaintiff testified."

### i.      Initial Review of Dates

Plaintiff came into HCDC on January 20, 2011.  He came in with crutches and they took

them away from him.  HCDC has a pod where he could have kept his crutches.  He was released

from custody for two weeks in order to receive surgery on his leg, in either February or March of

2011.  He did not have transportation for the surgery, so he had to reschedule, but HCDC arrested

him and re-incarcerated him before he could receive the surgery.  He sought treatment during those

two weeks from his niece, who is a registered nurse.  She cleaned his wound and changed the

dressing.

### ii.     Nurse Rook

Defendant Rook is identified in the complaint as an LPN for HCDC.  Plaintiff told her his

dressing needed changed each time she came around for pill call.  She told him she does not do

dressing changes.  One time she took the dressing off and put a maxi-pad on it.  After that she said

she would not change the dressing for any reason.  She refused to do so until he was released in

July to the ADC.  She further refused to provide him with any supplies to change the dressing himself.  She told him she did not want to have any dealing with his leg, because if something went wrong she would be responsible.  She told him to have someone else look at it.  No one looked at the wound on a regular basis.

### iii.    Defendant Godbolt

Defendant Godbolt is the Jail Administrator for HCDC.  He came to Plaintiff's pod to see him three times.  He saw Plaintiff's leg was bleeding.   He saw the bloody sheets and condition of the wound dressing.  Plaintiff asked to be taken to the hospital, and Defendant Godbolt told him he could not go back to the hospital.  Nor would he take him to see a doctor.  Defendant Godbolt changed the antibiotics he was prescribed, substituting a cheaper antibiotic.  He does not know what doctor issued the order for the change, but the only person who had authority to change the antibiotic was Defendant Godbolt.  Further, he was discharged from the hospital with a box of intravenous antibiotics and only got them two times.  Defendant Godbolt then took away all of his medications.

Plaintiff wrote complaints about Defendant Rook not changing his wound dressing. Defendant Godbolt wrote back and told him to stop complaining about his leg.

### iv.    Defendant Singleton

Plaintiff "could not honestly say the sheriff injured him."  When he saw him in the hall, he tried to explain he was supposed to be getting intravenous antibiotics. He also sent him requests. Defendant Singleton said he would look into it and see that he got his medication, but he never did.  When he was transferred to ADC he asked Defendant Singleton about the medication, and Singleton told him the jail was going to keep it because it was $60,000.00 worth of medication

that his family had paid for.

### v.      Defendants Summerville and Walker

Plaintiff was hopping around to go to the bathroom after his crutches were taken away. They moved him to another pod, but did not give him his crutches.  He fell on the floor again.  He beat on the door and called Summerville.  Summerville told him if he hit or kicked on the door again they were going to spray him.  His stitches were bleeding.  He kicked the door again, and Summerville and Walker sprayed him, and then drug him to the shower.  The next day he was taken to the hospital and told he should have crutches.  This pepper-spraying incident is his only complaint against Summerville and Walker.

### vi.      Defendant Mouldon

Defendant Mouldon took his crutches away at both of his bookings.  She knew he fell and did not call in the right person to deal with the leg injury.  This was about January 22, 2011.  In March of 2011 she took his crutches away again when he was re-incarcerated, and said he would just have to hop around.

### vii.      Customs or Policies of HCDC

Plaintiff did not name a specific custom or policy of HCDC which injured him.  He was taken to the hospital four times in January, after which he was told he could not go to the hospital any more.  The last time he was taken to the hospital was January 25, 2011.  Then he was released in February or March for two weeks to get surgery while he was released.

### viii.      Status of Infection at Booking

Plaintiff did not have an MRSA infection when he was booked into HCDC the first time. He got the MRSA due to lack of care from HCDC.

### ix.    Compliance with Care Instructions

Plaintiff was asked if he had ever picked at, scratched, pulled out stitches, or otherwise did anything to reopen the wound.  "No.  At no time did I mess with my leg."

Plaintiff was asked if he ever refused to take medication.  "No sir.  At no time did I refuse medication, especially pain medication."  Knew he needed everything or he could lose his leg.

Plaintiff was asked if he had ever intentionally harmed himself.  Yes. He cut himself on the stomach.  "My son died, and I was upset, and they wouldn't send me to a counselor."

### x.    Continuing Problems or Complications

Plaintiff has a three inch hole in his leg.  He is going to the wound clinic at Arkansas Baptist Hospital to see if they can get the hole in his leg to close up.  He is still on antibiotics.  Plaintiff stated he had one exhibit he wanted to submit, but it was on his medical jacket.[3]

## 2.    LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party."  *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995).  The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth

---

[3] Plaintiff did not submit an additional exhibit after the hearing.

specific facts to raise a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  The Court must view all evidence and inferences in a light most favorable to the nonmoving party.  *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012).  However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**3.      DISCUSSION**

Defendants argue summary judgment is appropriate for the following reasons: 1) there are no claims or evidence supporting any official capacity claims; 2) Plaintiff's claims against Defendant Singleton are barred by the doctrine of *respondeat superior*; 3) Plaintiff's only claim against Defendant Mouldon is that she took his crutches away on January 21, 2011, and therefore this claim is time-barred; 4) Plaintiff's claim of denial of medical care is not supported by the facts, which show he was taken to outside medical care eleven times during his six months of custody, and had a document history of self-inflicted wounds and non-compliance with treatment.  ECF No. 43.

**A.  Official Capacity Claims**

Under Section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or in both.  In *Gorman v. Bartch,* the Eighth Circuit Court of Appeals ("Eighth Circuit") discussed the distinction between individual and official capacity suits.  As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in
> their official capacities as to the type of conduct that is actionable and as to the type

of defense that is available. *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24–27, 112 S.Ct. at 361–62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* 502 U.S. at 25–27, 112 S.Ct. at 362.

*Gorman,* 152 F.3d 907, 914 (8th Cir.1998). "[R]igorous standards of culpability and causation must be applied to ensure that the [county] is not held liable solely for the actions of its employee" in cases where a plaintiff claims a county has caused an employee to violate the plaintiff's constitutional rights. *Board of County Commissioners, Oklahoma v. Brown,* 520 U.S. 397, 405 (1997).

Neither Plaintiff's written complaint nor his testimony identified any custom or policy of Hempstead County which caused him injury or otherwise violated his constitutional rights. Therefore, there are no genuine issues of material fact regarding Plaintiff's official capacity claims and these claims fails as a matter of law.

### B. Defendant Singleton

Plaintiff's claim against Defendant Singleton is barred by the doctrine of *respondeat superior*. A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Department of Social Services,* 436 U.S. 654, 694 (1978). "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes,* 21 F.3d 277, 280 (8th Cir. 1994); *see also Keeper*, 130 F.3d at 1314 ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability"). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability

of the supervisory defendants, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout,* 477 F.3d 962, 967 (8th Cir. 2007) (quoting *Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006)). In other words, a Defendant cannot be held liable merely because they hold a supervisory position at a facility.

In this case, Plaintiff testified that he "could not honestly say the sheriff injured him."  His testimony of Defendant Singleton's involvement indicated he saw Defendant Singleton in the hallway and told him he was not getting medications.  He testified the Defendant told him would look into it and see that he got his medications.  Plaintiff testified he did not do so because he did not get his intravenous antibiotics.  He also testified Defendant Singleton told him the jail was going to keep his intravenous antibiotics.   In his complaint, Plaintiff's only mention of Defendant Singleton in his ninety-five page complaint was in a request for an injunction ordering the "Hempstead County Jail administrator and the Sheriff to maintain and equip the Hempstead County Jail Facility with a fully adequate and operational Infirmary. . ."  ECF No. 1, p. 11.

None of these allegations support a causal link to, or responsibility for, any alleged injury to Plaintiff's leg while an inmate in HCDC.  Defendant merely talked to Plaintiff in the hallway. He had no first-hand knowledge of the condition of Plaintiff's leg.  Further, as Sheriff, he is not responsible for medical decisions.  Regarding Plaintiff's implied claim as to inadequacy of the infirmary, a prison does have a duty to "promptly provide necessary medical treatment for prisoners," including access to 24-hour emergency care.  *Johnson v. Bowers*, 884 F.2d 1053, 1056 (8th Cir. 1989), *modified on reh'g* (Oct. 27, 1989).  However, this Court finds no authority requiring a county jail have a full-service in-house infirmary and medical staff on hand to provide that care.  Therefore, the Court should not order the Sheriff or the County to provide a full-service

in-house infirmary.  There are no genuine issues of material fact regarding Plaintiff's personal capacity claim against Defendant Singleton, and this claims fails as a matter of law.

### C. Defendants Summerville and Walker

Plaintiff failed to state a cognizable excessive force claim against Defendant Summerville or Walker for spraying him with pepper spray.  The summary judgment documentation does not clearly indicate if Plaintiff was a pre-trial detainee or a post-conviction inmate at the time of the pepper spray incident.  The excessive force standard used for an excessive force claim differs for each status.  Based on Plaintiff's history in his March 2011 booking, it is likely he was a post-conviction detainee.  For a post-conviction inmate, an excessive force claim is analyzed as an Eighth Amendment claim.  Courts, including the Eighth Circuit, have concluded that "a limited application of [non-lethal chemical agent] to control a recalcitrant inmate constitutes a 'tempered response by prison officials' when compared to other forms of force." *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000)(discussing cases from a number of jurisdictions holding the use of chemical agents did not constitute cruel and unusual punishment if reasonably necessary to maintain security and order or subdue a recalcitrant prisoner).  The Eighth Circuit also noted that when "[u]sed in such manner and purpose, its application should 'rarely be a proper basis for judicial oversight.'" *Jones*, 207 F.3d at 496.

In *Johnson v. Blaukat*, 453 F.3d 1108, 1113 (8th Cir. 2006), the court considered factors including whether the actions of the officers were defensive in nature or motivated by anger; whether the actions were necessary to maintain order or were excessive reactions by frustrated officers; and whether the amount of force used was commensurate with the situation.  *Id.*  The court noted additional material issues included whether or not the inmate failed to comply with orders given by officers in the cell, whether the inmate was actively resisting them, whether verbal

13

orders or the application of less force would have been sufficient, whether or not a warning issued

before the application of the pepper spray, and whether the inmate suffered real injuries.  *Id.*

For pretrial detainees, the Due Process Clause of the Fourteenth Amendment protects from

"the use of excessive force that amounts to punishment."  *Graham v. Connor*, 490 U.S. 386, 395

n. 10 (1989)(citation omitted).  Any punishment of a pretrial detainee violates the Due Process

Clause.  *Edwards v. Byrd*, 750 F.3d 728, 732 n, 2 (8th Cir. 2014).  Any use of force is

unconstitutional if the force was used to "injure, punish, or discipline" a detainee.  *Id.* at 732.  A

use of force does not amount to unconstitutional punishment if it is "but an incident of some other

legitimate governmental purpose."  *Bell v. Wolfish*, 441 U.S. 520, 535, 538 (1979).

A pretrial detainee need only show that an officer's use of force was objectively

unreasonable to prevail on an excessive force claim.  *Kingsley v. Hendrickson, et al*, 135 S. Ct.

2466, 2473 (2015).  In determining whether a given use of force was reasonable or excessive, the

Court said the following may bear on the issue:

> the relationship between the need for the use of force and the amount of force used;
> the extent of the plaintiff's injury; any effort made by the officer to temper or to
> limit the amount of force; the severity of the security problem at issue; the threat
> reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* at 2476.  The Court noted this list was not exclusive, but instead only illustrated the "types of

objective circumstances potentially relevant to a determination of excessive force."  *Id.*

Plaintiff failed to state a cognizable excessive force claim under either standard.  Plainitff's

own testimony indicated the spray was applied in a good faith effort to maintain discipline.

Plaintiff testified he was hitting the door.  Plaintiff testified he was warned to stop hitting the door

or he would be pepper-sprayed.  Plaintiff ignored both the order and the warning and continued

hitting the door.  He was then sprayed by both Walker and Summerville.  Plaintiff testified he was

taken to the shower immediately after the spraying to remove the pepper spray.  Plaintiff did not

allege the amount or duration of the spray was excessive.  This same testimony indicates the use

and amount of force was objectively reasonable against a pre-trial detainee to achieve the

legitimate non-punitive governmental purpose of maintaining safety and order.  Therefore, no

violation of the Eighth or Fourteenth Amendments occurred, and Plaintiff's claim fails as a matter

of law.

### D.  Defendant Mouldon

Plaintiff's sole claim against Defendant Mouldon is her removal of his crutches at his two

bookings into HCDC, in January and March of 2011.  Plaintiff did not list the March 2011 removal

in his complaint, but did so in testimony at the hearing.  He alleges the lack of crutches caused him

fall and injure his leg.  Defendants argue the January 2011 removal is time-barred, because Plaintiff

did not file his complaint until February 13, 2014, more than three years later.  This argument is

correct.  The statute of limitations for § 1983 claims is the state statute of limitations for personal

injury actions. *Morton v. City of Little Rock*, 934 F. 2d 180, 183 (1991) (citing *Wilson v. Garcia*,

471 U.S. 261 (1985).  In Arkansas, this period is three years. *Id.* (referencing Ark. Code Ann. §

16-56-105.)

This leaves her removal of his crutches in March 2011. The removal of his crutches for

reasons of safety and security also fails to state a cognizable claim.  It is not the role of this Court

to second-guess the judgment of prison administrators on issues of prison management unless a

facially valid constitutional claim is raised.  *Iron Eyes v. Henry*, 907 F.2d 810, 812 (8th Cir. 1990)

(citing *Bell v. Wolfish*, 441 U.S. 520, 545 (1979).  "Maintaining institutional security and

preserving internal order and discipline are essential goals that may require limitation or retraction

of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Bell*, 441

U.S. at 546.  Thus, the removal of Plaintiff's crutches at booking for safety and security reasons did not state a cognizable claim because the removal was reasonably related to a legitimate penological interest.  *See e.g. Davis v. Hall*, 992 F.2d 151 (8th Cir. 1993) (denial of crutches did not constitute deliberate indifference to medical needs); *Defreitas v. Montgomery* County Correctional facility, 525 Fed. Appx. 170, 177-78) (3d Cir. 2013) (prohibiting an inmate's use of crutches in certain portions of the prison because there was concern that the crutches could be used as a weapon did not violate Eighth or Fourteenth Amendments.)

### E.  Defendants Rook and Godbolt – Denial of Medical Care

Plaintiff has stated a cognizable claim against Defendant Rook and Defendant Godbolt for denial of medical care.  The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs.  *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012).  To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs.  *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious

that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation.  Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

Further, it is well settled that a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citations omitted).  An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.*  Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference.  *See Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976).  However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009).  The objective seriousness of delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence in the record.  *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005).  Unless,

however, the need for medical attention is obvious to a layperson in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub v. VonWald,* 638 F.3d 905, 919 (8th Cir. 2011) (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999); *Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir. 1995); *see also Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation").

In this case, there is no question Plaintiff had an objectively serious medical need in the form of an open and bleeding wound on his leg. That such a wound is a serious medical need would be obvious even to a layperson. Plaintiff has alleged Defendant Rook, a licensed practical nurse, refused to change the wound dressing on his leg, and refused to provide the supplies for him to do it himself. He further alleges the only time she changed the dressing, she used a maxi-pad instead of proper bandages. The use of a sanitary napkin is confirmed in the notes from RVMSC on April 25, 2011, stating he came in with a sanitary napkin on his leg. In her affidavit, Defendant Rook stated she changed the dressing on Plaintiff's wound daily as prescribed. She then stated when he "continually accused me of changing his dressing wrong, I eventually told him to change the dressings himself and provided him with the supplies he needed to keep his wound clean and change the dressing." ECF No. 43-13. She further stated she believed Plaintiff was opening up the wound and tampering with it, which caused the problems with healing and infection. While at least one HCDC incident report indicates Plaintiff refused to change his dressing, the medical records provided confirm Plaintiff underwent at least two irrigation and debridement procedures, received intravenous antibiotics, was diagnosed with osteomyelitis, and was suspected to have an MRSA infection. Thus, a material question of fact remains as to whether Defendant Rook denied Plaintiff medical care.

Likewise, a question of material fact remains as to whether Defendant Godbolt denied medical care to Plaintiff. Plaintiff testified Defendant Godbolt came to his pod three times to talk to him. Plaintiff testified Defendant Godbolt saw Plaintiff's bleeding leg, the bloody sheets, and the poor condition of the wound dressing during those visits. Plaintiff alleges Defendant Godbolt told him he could not go to the hospital again. Plaintiff further alleges Defendant Godbolt told him to stop complaining about his leg. Thus, according to Plaintiff's testimony, Defendant Godbolt had actual knowledge of Plaintiff's objectively serious medical condition and nonetheless denied him medical treatment.

## 4.    CONCLUSION

For the reasons stated, I recommend that Defendants' Motion for Summary Judgment (ECF No. 42) be **DENIED IN PART and GRANTED IN PART.** I recommend Plaintiff's claims against Defendants Singleton, Walker, Summerville, Mouldon, and Hempstead County be dismissed with prejudice. Plaintiff's claims against Defendants Rook and Godbolt for denial of medical care should remain for further consideration.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **14th day of June 2016.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE